UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES ex rel.** <br> **THOMAS WARDER, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4191** |
| **SHAW GROUP, INC., ET AL** | **SECTION "A"(3)** |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment by Shaw Environmental, Inc. ("Shaw"). Rec. Doc. 229. Relators Thomas Warder, Gary Keyser, and Elizabeth Reeves (collectively "relators") have requested that the Court defer or stay a decision on Shaw's motion and also oppose the motion. Rec. Doc. 247. The Court granted Shaw leave to file a reply. Rec. Doc. 257.[1] For the reasons that follow, the motion is DENIED without prejudice to Shaw's right to re-urge a motion for summary judgment before the pretrial motion deadline.

**I. Background**

This is a False Claims Act case in which relators allege that Shaw engaged in spurious billing under contracts with the Federal Emergency Management Agency ("FEMA") to haul, install, maintain, and deactivate temporary housing units following Hurricanes Katrina and Rita.[2] Under the operative fifth-amended complaint ("the complaint"), relators state a single count against Shaw, alleging that it duplicatively billed FEMA for the same work or billed FEMA for work not actually done. Civ. A. No. 06-11229, Rec. Doc. 258 at 22.

---

[1] The Court acknowledges that Shaw styled this filing as an "Opposition to Relators' Rule 56(d) Motion to Defer or Stay Decision."

[2] Relators also have pending claims against defendant Flour Enterprises, Inc. ("Flour"). Relators initially stated a claim against CH2M HILL Contractors, Inc.; however, that claim was dismissed. *See* Rec. Doc. 87. The Court acknowledges the long and winding procedural history of this case. Rather than attempt to fully recount that history, the Court instead provides only that background clearly pertaining to the instant motion.

1

According to the complaint, relators are former employees of FEMA and worked as Supervisory Program Managers and Contracting Officer Technical Representatives (COTR). *Id.* at 2. In that capacity, relators allege they provided "technical administration, contractor oversight and certification of payments" and monitored efforts being performed by contractors working for FEMA in the aftermath of Hurricanes Katrina and Rita. *Id.* Relators allege that, under Shaw's contract with FEMA, Shaw was obligated to perform various services related to temporary housing units, including site selection and inspection, utility installations, unit hauling and installation, leasing, maintenance, and unit deactivation. *Id.* at 6.

Relators contend that Shaw entered information about their work for FEMA into a database ("FRRATS") created and maintained by a third-party FEMA contractor. *Id.* at 8. Between September 2005 and November 2006, relators allege that Shaw had the ability to issue itself and subsequently bill FEMA for work orders, without notice to the FEMA contracting officer or FEMA employees like relators. *Id.* at 8–22. Relators contend that FEMA approved invoices tying to such work orders without having access to the FRRATS database and without the invoices clearly indicating for what services were being billed. *Id.* Relators allege that during the period in which Shaw was issuing itself work orders, Shaw engaged in double and triple billing for the placement of the same trailer and billed for work outside of the region to be served under its contract with FEMA. *Id.* Relators allege that despite their having discovered the false billing scheme by "combing through complex spreadsheets after the fact," it was not possible for FEMA employees to ascertain the scheme at the time that these work orders were issued." *Id.* Relators further allege that Shaw had exclusive possession and control over the information necessary to prove the allegations and show damages. *Id.*

The case was filed under seal (in accordance with the False Claims Act) in June 2009. Rec. Doc. 1. After being unsealed three years later in October 2012, the case was consolidated with Civil Action Number 06-11229 in February 2013. *See* Rec. Docs. 31 & 85. While consolidated, the Court, Judge Berrigan presiding, denied Shaw's motion to dismiss as to the still-pending Count I. *See* Civ. A. No. 06-11229, Rec. Doc. 203.[3] On May 6, 2014, the case was deconsolidated from 06-11229. *See* Rec. Doc. 87. In November 2014, relators' initial counsel moved to withdraw, citing "irreconcilable differences" on the best way to proceed with the case. Rec. Doc. 115. The Court stayed proceedings for roughly two months before permitting current counsel for relators to substitute for relators' initial counsel. *See* Rec. Docs. 115, 116, & 118.

Since January 2015, the case has been continued twice, with numerous discovery-related motions submitted to the assigned magistrate judge.[4] On January 5, 2016, the case was temporarily realloted to Section A. Rec. Doc. 196. On March 2, 2016, the Court held a status conference to discuss a motion to extend expert deadlines by relators and set a trial date accommodating Section A's calendar. Rec. Docs. 207. The Court ordered the parties to submit a jointly proposed case management order. *Id.*

Prior to the submission of the jointly proposed case management order, Shaw filed the instant motion on April 5, 2016. Rec. Doc. 229. On April 7, 2016, the Court held a status conference to discuss the parties' proposed case management order and coordinate with the parties to set a revised scheduling order containing deadlines for expert reports, discovery, and pretrial motion practice. Rec. Doc. 235. On May 3, 2016, relators filed their opposition to

---

[3] By separate order, the Court dismissed relators' Count II against Shaw as jurisdictionally barred under the False Claims Act. *See* Rec. Doc. 87.

[4] Trial dates have been continued twice either by consent or unopposed motion. *See* Rec. Docs. 133, 138, 189, & 192. Judge Knowles has entered multiple orders regarding the scope of discovery and nature of the party's discovery obligations. *See* Rec. Docs. 139, 176, 194 225, & 238.

Shaw's motion. Rec. Doc. 247. On May 6, 2016, the Court granted Shaw leave to file a reply to relators' opposition. Rec. Doc. 257.

## II. Arguments of the Parties

Shaw seeks summary judgment on three issues. First, Shaw seeks summary judgment on relators' "claims against Shaw for unauthorized work orders." *See* Rec. Doc. 229-1 at 1–2. Second, Shaw asserts that it is entitled to summary judgment as to relators' claims "regarding allegedly duplicative" installations and deactivations. *See id.* Third, Shaw contends that relators "concede they are not pursuing any claims against Shaw regarding alleged double billing for THU maintenance" and thus are entitled to summary judgment on such claims. *See id.*

As to the first set of claims on which Shaw seeks summary judgment, Shaw contends that relators' allegations that Shaw double billed FEMA "is premised entirely upon their assertion that none of the installations Shaw performed were authorized by FEMA." *See id.* at 7–8. Shaw contends that there is no dispute that the process used to issue Shaw work orders was created by FEMA and that a declaration of Stephen DeBlasio—the Chief of Housing Operations for FEMA during the relevant time period—along with relators' deposition testimony clearly demonstrate that all of Shaw's trailer installation work was performed pursuant to its contract with FEMA. *See id.* at 10–13. Shaw contends it cannot be liable for fraud "by performing work pursuant to government direction." *See id.* at 9.

As to the second set of claims, Shaw contends that, despite two years of discovery, relators have not produced evidence substantiating their allegations that Shaw double billed FEMA. *See id.* at 13–18. Shaw contends that relators' deposition testimony reflects that relators have no evidence of actual double billing. *See id.* Specifically, Shaw contends that relators have

no evidence corroborating that Shaw actually double billed FEMA in alleged instances where Shaw's work order database reflected duplicative entries" *Id.*

Finally, Shaw contends that, despite relators' allegations that Shaw double billed for maintenance services provided, the deposition testimony of two relators demonstrates that relators make no such claim. *See id.* at 18–19.

Relators oppose Shaw's motion, invoking the provisions of Federal Rule of Civil Procedure 56(d). Rec. Doc. 247. Relators cite to an affidavit by an attorney for relators that addresses what discovery has yet to be completed and how that discovery will support their case. *See* Rec. Doc. 247-2. The affiant asserts that relators, through discovery so far, have "identified numerous examples" of overlapping work orders and "at least one instance in which Shaw billed FEMA for 418 [temporary housing units] provided by its subcontractor Harris Builders, when the back-up documents provided by Shaw to the Relators indicate that only 90 trailers had actually been provided." *See id.* at 2–3.[5] The affiant further asserts that a recent deposition of Shaw's corporate representative reveals that Shaw possesses but has not produced a repository of all its billings to FEMA ("VISION"). *See id.* at 3–4. The affiant asserts that production of VISION to relators would allow relators to identify duplicative billing. *See id.* The affiant further asserts that Shaw's corporate representative testified as to a "stand alone tracking data base" ("MS Access") that Shaw has used to verify invoices submitted by subcontractors, the production of which would permit relators to determine whether duplicative invoices by Shaw's subcontractors were passed on to FEMA. *See id.* The affiant asserts that, instead of producing

---

[5] The Court notes that the affiant also asserts that the relators have identified billing for "stand-by" time and have identified further discovery needed to prove damages. *See* Rec. Doc. 247-2 at 3, 5. Shaw is currently seeking to prohibit discovery on this topic as being outside the scope of the operative complaint. Rec. Doc. 260. This order and reasons should not be construed as prejudicing the proceedings currently before the assigned magistrate judge.

this discovery, Shaw has produced difficult to analyze scanned copies of work orders, invoices, and other documentation. *See id.* at 6.

The affiant further asserts that relators are currently in the process of issuing third party subpoenas to subcontractors of Shaw to obtain discovery related to subcontractor invoicing and also intend to depose Stephen DeBlasio regarding the issue of whether Shaw employees were responsible for issuing duplicate work orders to Shaw. *See id.* at 7–8. The affiant asserts that discovery has not been postponed "because of lack of diligence on the Relators['] part but either because the Relators' expert was reviewing voluminous paper records, because the Relators[] sought further information about the availability of electronic databases which was only disclosed during the Shaw 30(b)(6) deposition, or because the discovery only became necessary after the filing of the Defendant's Motion for Partial Summary Judgment with the attached declaration of Stephen DeBlasio." *Id.* at 8.

In its reply, Shaw argues that relators' Rule 56(d) opposition does not respond to the three issues on which Shaw seeks summary judgment. *See generally* Rec. Doc. 527. Shaw contends that "the majority of what Relators seek is irrelevant to the Motion and, in any event, will not counter Shaw's undisputed material facts cited in the Motion." *Id.* at 2 n.1. Specifically, Shaw contends that a deposition of Stephen DeBlasio will not result in countervailing evidence against Shaw's position and that VISION is not an information system capable of showing what was billed to and paid by FEMA. *See id.* at 5–9.[6] Furthermore, Shaw asserts that it notified relators on March 31, 2016, that it would make MS Access available to relators and that MS Access was not used for purposes of invoicing FEMA. *See id.* at 9. Shaw contends that relators' opposition in essence concedes that relators have no factual support for the allegations at issue

---

[6] The Court acknowledges that Shaw's reply also addresses the "stand-by" billing issue. Rec. Doc. 249-1 at 3–5. For the reasons stated in footnote 5, the Court does not address the issue.

and that relators' assertions that Shaw has not been forthcoming during discovery are false. *See id.* at 2. Finally, Shaw asserts that relators' opposition fails to address Shaw's argument that relators no longer assert a claim as to maintenance work performed by Shaw. *See id.* at 10.

## II. Discussion

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-movant, show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (internal quotation omitted) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute over a material fact is "genuine" if the evidence in the record is such that a reasonable jury could find in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). Courts, however, must draw all justifiable inferences for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has shown "that there is an absence of evidence to support the non-moving party's cause, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial." *TIG Ins.*, 276 F.3d at 759 (internal quotation omitted) (citing FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusory allegations, denials, improbable inferences, unsubstantiated assertions, speculation, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th

Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Amer. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

Rule 56(d) permits a Court to order further discovery upon a showing by the nonmoving party that, "for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). The Fifth Circuit has stated that a district court has broad discretion over discovery matters; however, the court should liberally grant requests for additional discovery where the nonmovant has shown "(1) why additional discovery is necessary and (2) how the additional discovery will likely create a genuine issue of material fact." *Danos v. Union Carbide Corp.*, 541 Fed. Appx. 464, 467 (5th Cir. 2013) (citing *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999)) (internal quotation omitted).

Upon review of the briefs, the current record, and applicable law, the Court concludes that it is appropriate to defer ruling on Shaw's motion for partial summary judgment. The Court does not make light of the extensive delays in the disposition of this case.[7] However, the Court concludes that relators have sufficiently established for the purposes of Rule 56(d) that discovery is on-going as to the central issue of Shaw's actual billing of FEMA. Specifically, relators contend additional time is necessary to obtain and analyze two electronic databases. Relators also fairly seek to depose Stephen DeBlasio regarding Shaw's involvement in the work order issuing process.[8]

---

[7] With no intent to apportion fault or diminish hardships, the Court does find it appropriate to contextualize the seven-year duration of this case. The case was under seal and effectively out of relators' control for over three years until the United States declined to intervene and the case was unsealed in October 2012. Thereafter, Rule 12 motion practice continued through early 2014, with the first scheduling order entered in May 2014. All this, before the January 2015 substitution of plaintiffs' counsel.

[8] The Court notes that relators' Rule 56(d) opposition does not point to specific additional discovery needed on the issue of whether relators have abandoned their allegations of double billing related to Shaw's maintenance work for FEMA. The Court further notes, however, that Shaw points to deposition testimony of only two of the three relators and cites no case law directly supporting the proposition that the statements made by the two relators are sufficient

The current deadlines for discovery, expert reports, and dispositive motions—which the Court worked out with counsel for the parties after Shaw filed the instant motion—expire over the next two months. *See* Rec. Doc. 235. The Court has made sufficiently clear to counsel for the parties that it will not look kindly on further extensions of deadlines. With the expectation that the parties will work in good faith to complete outstanding discovery, the Court finds it will be more appropriate and more manageable[9] to rule on summary judgment once there can be no dispute that relators have been afforded the time for discovery agreed to be counsel. Accordingly,

**IT IS ORDERED** that the Motion is **DENIED** without prejudice to Shaw's right to timely re-urge a motion for summary judgment. Rec. Doc. 229.

New Orleans, Louisiana, this 2nd day of June, 2016.

_____
**JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE**

---

for the Court to conclude that relators have abandoned the allegations. Rec. Doc. 229-1 at 18–19 (citing *Celotex*, 477 U.S. at 322 and *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Finding that both parties have failed to adequately brief the issue, the Court will defer judgment. Shaw is free to timely re-urge its motion for summary judgment on the issue.

[9] While Shaw does not explicitly represent that it eventually plans to seek summary judgment on all relators' claims, the implication is clear. *See, e.g.*, Rec. Doc. 229-1 n.2. The Court is not unsympathetic to Shaw's attempt to narrow the issues before the Court; however, in the case's current posture, it appears to the Court that there would be substantial benefits in terms of clarity and efficiency to consider all the claims and defenses on which Shaw will seek summary judgment in comprehensive fashion.