UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES ex rel.                                    CIVIL ACTION
THOMAS WARDER, ET AL

VERSUS                                                   NO. 09-4191

SHAW GROUP, INC., ET AL                                  SECTION "A"(3)

<u>ORDER AND REASONS</u>

Before the Court are two motions for summary judgment filed by Fluor Enterprises, Inc. ("Fluor"). Rec. Docs. 303 & 309. The two motions cumulatively seek to dismiss all of the claims against Fluor alleged by Relators Thomas Warder, Gary Keyser, and Elizabeth Reeves (collectively "Relators"). *Id.* Relators filed a single opposition to both motions. Rec. Doc. 316. The Court granted Fluor leave to file a reply. Rec. Doc. 329. For the reasons that follow, both motions are GRANTED.

**I. Background**

This is a False Claims Act case in which Relators allege that Fluor engaged in spurious billing under contracts with the Federal Emergency Management Agency ("FEMA") to haul, install, maintain, and deactivate temporary housing units following Hurricanes Katrina and Rita.[1] Under the operative fifth-amended complaint ("the complaint"), there are two counts remaining against Fluor. In Count I, Relators allege that Fluor duplicatively billed FEMA for the same work or billed FEMA for work not actually done. *See* Civ. A. No. 06-11229, Rec. Doc. 258 at

---

[1] Relators' Count I also states a still-pending claim against defendant Shaw Environmental, Inc. ("Shaw"). Relators initially alleged a claim against CH2M HILL Contractors, Inc.; however, that claim was dismissed. *See* Rec. Doc. 87. The Court acknowledges the long and winding procedural history of this case. Rather than attempt to fully recount that history, the Court instead provides only that background clearly pertaining to the instant motions.

22. In Count III, Relators allege that Fluor billed FEMA for work that was outside the scope of Fluor's contract with FEMA and/or not actually done. *Id.* at 23.

According to the complaint, Relators are former employees of FEMA and worked as Supervisory Program Managers and Contracting Officer Technical Representatives ("COTR"). *Id.* at 2. In that capacity, Relators allege they provided "technical administration, contractor oversight and certification of payments" and monitored efforts being performed by contractors working for FEMA in the aftermath of Hurricanes Katrina and Rita. *Id.* Relators allege that, under Fluor's contract with FEMA, Fluor was obligated to perform various services related to temporary housing units, including site selection and inspection, utility installations, unit hauling and installation, leasing, maintenance, and unit deactivation. *Id.* at 6.

Relators contend that Fluor entered information about their work for FEMA into a database ("FRRATS") created and maintained by a third-party FEMA contractor. *Id.* at 8. Between September 2005 and November 2006, Relators allege that Fluor had the ability to issue itself and subsequently bill FEMA for work orders, without notice to the FEMA contracting officer or FEMA employees like Relators. *Id.* at 8–22. Relators contend that FEMA approved invoices tying to such work orders without having access to the FRRATS database and without the invoices clearly indicating the services being billed. *Id.* Relators allege that during the period in which Fluor was issuing itself work orders, Fluor engaged in double and triple billing for the placement of the same trailer and billed for work outside of the region to be served under its contract with FEMA. *Id.* Furthermore, Relators allege that Fluor billed FEMA for useless hauling work on trailers. *Id.* Relators allege that despite their having discovered the false billing scheme by "combing through complex spreadsheets after the fact," it was not possible for FEMA employees to ascertain the scheme at the time that these work orders were issued." *Id.* Relators

further allege that Fluor had exclusive possession and control over the information necessary to prove the allegations and establish damages. *Id.*

The case was filed under seal (in accordance with the False Claims Act) in June 2009. Rec. Doc. 1. After being unsealed three years later in October 2012, the case was consolidated with Civil Action Number 06-11229 in February 2013. *See* Rec. Docs. 31 & 85. While consolidated, the Court, Judge Berrigan presiding, denied Fluor's motion to dismiss as to the still-pending Counts I and III. *See* Civ. A. No. 06-11229, Rec. Doc. 204.[2] On May 6, 2014, the case was deconsolidated from 06-11229. *See* Rec. Doc. 87. In November 2014, Relators' initial counsel moved to withdraw, citing "irreconcilable differences" on the best way to proceed with the case. Rec. Doc. 115. The Court stayed proceedings for roughly two months then granted current counsel for Relators' motion to substitute for Relators' initial counsel. *See* Rec. Docs. 115, 116, & 118.

Since January 2015, the case has been continued twice, with numerous discovery-related motions submitted to the assigned magistrate judge.[3] On January 5, 2016, the case was temporarily realloted to Section A. Rec. Doc. 196. On March 2, 2016, the Court held a status conference to discuss a motion to extend expert deadlines by Relators and set a new trial date. Rec. Docs. 207. The Court ordered the parties to submit a joint proposed case management order. *Id.*

Prior to the submission of the joint proposed case management order, Fluor filed a motion for partial summary judgment on March 18, 2016. Rec. Doc. 223. Fluor's motion was

---

[2] By separate order, the Court dismissed relators' Count II against Fluor as jurisdictionally barred under the False Claims Act. *See* Rec. Doc. 87.
[3] Trial dates have been continued twice either by consent or unopposed motion. *See* Rec. Docs. 133, 138, 189, & 192. Judge Knowles has entered multiple orders regarding the scope of discovery and nature of the parties' discovery obligations. *See* Rec. Docs. 140, 194, 238, & 282.

styled as a "no evidence" motion for summary judgment on all claims of Relators except Relators' claim that Fluor double billed for 109 trailers. *Id.;* Rec. Doc. 223-1. Fluor represented it would seek summary judgment after the completion of Fluor's corporate deposition. *Id.* In case the Court denied its motion for partial summary judgment, Fluor's motion sought, in the alternative, leave to depose Relators' counsel, asserting that such a deposition would be the only manner for Fluor to determine factual basis for Relators' allegations against Fluor. *Id.*

On April 7, 2016, the Court held a status conference to discuss the parties' proposed case management order and coordinate with the parties to set a revised scheduling order containing deadlines for expert reports, discovery, and pretrial motion practice. Rec. Doc. 235. Relators opposed Fluor's motion on the grounds that they needed additional time to complete discovery. Rec. Doc. 244. On June 3, 2016, the Court denied Fluor's motion for partial summary judgment without prejudice to Fluor's right to timely re-urge a motion for summary judgment. Rec. Doc. 267. The Court concluded that, in accordance with Federal Rule of Civil Procedure 56(d), Relators had adequately demonstrated a need for additional time for discovery. *Id.* The Court referred Fluor's alternative request to depose Relators' counsel to the assigned magistrate judge. *Id.*

On June 29, 2016, the assigned magistrate judge granted Fluor's motion for leave to depose Relators' counsel as unopposed. Rec. Doc. 282. On July 27, 2016, the deadline for discovery and depositions passed. Rec. Doc. 235.

On August 3, 2016, Fluor re-urged its "no evidence" motion for partial summary judgment. Rec. Doc. 303. On that same day, Fluor filed an additional motion for partial summary judgment seeking dismissal of Relators' claim regarding double billing for 109 trailers. Rec. Doc. 309. On August 9, 2016, Relators filed a single memorandum, opposing both of Fluor's

motions for partial summary judgment. Rec. Doc. 316. On August 17, 2016, Fluor filed a reply. Rec. Doc. 329.

## II. Arguments of the Parties

### A. Fluor's Re-Urged "No Evidence" Motion for Partial Summary Judgment

Because Fluor's arguments in support of its re-urged "no evidence" motion for partial summary judgment vary only slightly from its arguments in favor of its initial "no evidence" motion, the Court finds it necessary to provide only a brief summary of Fluor's arguments. *See* Rec. Doc. 267; *see also* Rec. Docs. 223-1 & 303-3. Fluor contends that the record in this case demonstrates that all claims by Relators excepting one regarding double billing for 109 trailers are "totally baseless." Rec. Doc. 303-3.

The central argument of Fluor's motion is that—as evidenced by Relators' depositions and besides possible double billing for 109 trailers—Relators have no evidence to support the claims in the complaint. *See id.* at 3. Fluor asserts that Relators can point to no evidence in the record that Fluor charged FEMA for roughly 10,000 trailers not actually installed or that Fluor double billed FEMA for trailer installation. *Id.* at 6–11. Fluor asserts that Relators do not dispute that the FRRATS database referenced in Relators' complaint was not actually used by Fluor to invoice FEMA, that the FRRATS database contains significant errors, or that the only way to determine what Fluor actually billed FEMA for is to review the actual invoices submitted by Fluor to FEMA. *Id.* Fluor asserts that Relators nonetheless continue to ground their claims on information from FRRATS, even though it was not used for invoicing and despite Relators' additional concession that FRRATS contains errors. *Id.* Fluor asserts that all of its invoices have been made available to Relators and Relators have not substantiated their claims based on the information contained in the invoices. *Id.*

Fluor further asserts that Relators—besides the 109 trailers and a few statements by Relators regarding overheard rumors—have come forward with no evidence that Fluor billed FEMA for work not actually completed or otherwise uselessly completed work in order to bill for it. *Id.* at 11–13. Fluor asserts that Relators' claims regarding self-issued work orders are meritless and that Relators have not articulated any way in which such orders might support a claim for damages. *Id.* at 14–19. Finally, Fluor asserts that Relators have conceded that they have no evidence supporting a claim that Fluor fraudulently billed miscellaneous services. *Id.* at 19–20.

### B. *Fluor's Motion for Partial Summary Judgment Regarding the 109 Trailers*

Fluor's other motion for partial summary judgment asserts that Fluor is entitled to summary judgment on any claim by Relators that Fluor double billed FEMA for 109 trailers. *See* Rec. Doc. 309-3. Fluor notes that the cumulative effect of the Court granting both its "no evidence" motion for partial summary judgment and its motion for partial summary judgment regarding the 109 trailers would be dismissal of all claims against Fluor. *See id.* at 1–2.

Fluor asserts that, over the course of delivering services to FEMA, it potentially double billed FEMA for the hauling and installation of 109 trailers. *Id.* at 2. Fluor asserts that it had in place over the life of its contract with FEMA multiple audit procedures to detect double billing both at the time of billing and before contract close out. *Id.* Fluor asserts that its own 2009 internal contract close-out audit discovered the potential double billing for the 109 trailers, that it promptly alerted FEMA of the issue, and soon after reimbursed FEMA for the potential overbilling. *Id.* (citing Rec. Doc. 309-21 at 27; Rec. Doc. 309-8). Fluor asserts that all these events occurred three and a half years before Fluor was put on notice of Relators' False Claims Act suit and emphasizes that the potential overbilling for 109 trailers occurred in the context of

Fluor hauling and installing approximately 54,850 trailers. *Id.* at 2. Fluor asserts that the record surrounding the potential double billing for the 109 trailers clearly demonstrates the occurrence was nothing more than a caught and corrected billing mistake and does not support liability under the False Claims Act.

Fluor argues that liability under the False Claims Act does not attach absent a knowing request for payment to the Government that the Government does not actually know. *Id.* at 4. Fluor argues that it must either have had actual knowledge of false billing, acted in deliberate ignorance of the false billing, or acted in reckless disregard of the false billing. *Id.* (citing *United States ex rel. Johnson v. Kaner Med. Group*, 641 Fed. App'x 391, 394 (5th Cir. Mar. 7 2016)). Fluor argues that negligence or gross negligence on its part could not satisfy the knowledge requirement of the False Claims Act. *Id.* at 4–5.

Fluor argues that the record is clear that Fluor did not have actual knowledge of the potential double billing at the time it invoiced FEMA, did not act with deliberate ignorance, and did not act with reckless disregard when it potentially double billed FEMA for the 109 trailers. *Id.* at 5. Fluor outlines the nature of its fixed-fee contract with FEMA and the task order ("Task Order 20") under which it performed the trailer hauling and installation work in question. *Id.* at 6. Fluor further describes the process by which it used subcontractors to perform much of the work. *Id.* at 6–12. Fluor outlines how it would track and review invoices from subcontractors for proper performance of services and compliance with the FEMA contract. *Id.* Using records relating to the subcontractor involved with the potential overbilling for the 109 trailers, Fluor describes how its employees conducted thorough reviews of each subcontractor claim for payment, partially withheld or deducted payment based on that review, and then engaged in an

iterative process with the subcontractor to resolve billing disputes all before Fluor paid the subcontractor and before Fluor would invoice FEMA. *Id.* (citing Rec. Doc. 309-12).

With specific regard to the 109 trailers, Fluor describes how its own contract close-out auditors conducted a comparison of invoice records to identify any duplicative listing of unique identifying numbers for trailers on Fluor's invoices. *Id.* at 12–16. For any duplicative listing, Fluor states that its auditors conducted further investigation by reviewing invoice documentation to determine if an actual double billing occurred. *Id.* (citing Rec. Docs. 309-12 & 309-21). Fluor asserts that, by this process, its auditors identified 109 trailers for which there was no proper documentation to affirmatively rule out the possibility that a double billing had occurred. *Id.* (citing Rec. Docs. 309-4 & 30-12).[4] Fluor emphasizes that the potential double billing for 109 out of 54,850 trailers means that Fluor billed with an error rate of less than 0.2%. *Id.* Following the determination that it had potentially overbilled for 109 trailers, Fluor describes how its personnel contacted FEMA to apprise them of the situation and determine the best way for Fluor to reimburse FEMA, both for the double billing and for associated indirect costs totaling $945,681.03. *See id.* at 14–19 (citing Rec. Doc. 309-4).

Following the description of the facts surrounding the potential double billing for the 109 trailers, Fluor points to an expert report of a government contract consultant, which reviews Fluor's internal billing processes and concludes that, "[a]fter the urgency of hauling and installing [trailers] to house hurricane victims," Fluor used reasonable and effective subcontractor invoice review procedures under the circumstances. *Id.* at 18–20 (citing Rec. Doc.

---

[4] It appears from the record that Fluor and the pertinent subcontractor still dispute whether a double billing occurred, with the subcontractor asserting that the second invoice for the trailers occurred because an earlier invoice for the trailers was rejected by Fluor. *See* Rec. Docs. 309-4 & 309-9. Fluor represents that it was not able to recover from the subcontractor the funds reimbursed to FEMA for the potential double billing. Rec. Doc. 309-12 at 9.

309-23). Fluor argues that the expert report supports the conclusion that the potential double billing for the 109 trailers was nothing more than a mistake. *Id.*

Fluor argues that there is no genuine issue of material fact in dispute to even establish that Fluor had the requisite knowledge of false billing for the 109 trailers. As such Fluor is not liable under the False Claims Act as a matter of law. Rec. Doc. 309-3 at 20–24. Fluor argues that it discovered its own "unintentional, honest" billing mistake and corrected that mistake years before knowing it was the subject of a False Claims Act suit. Fluor argues further that the record demonstrates that it exercised reasonable care with regards to its billing of FEMA and oversight of subcontractor billing and that an isolated and corrected mistake such as the potential double billing for 109 out of 54,850 does not evidence a knowingly false claim to the government. *Id.*

   *C. Relators' Combined Opposition*

Relators filed a single memorandum in opposition to both of Fluor's motions for partial summary judgment. Rec. Doc. 316. Relators assert that Fluor fails to account for "the trove of evidence" showing an "unmistakable course of fraudulent conduct in the billing, invoicing and performance practices surrounding its FEMA contracts." *Id.* at 5. Relators assert that "Fluor admits it already double-billed FEMA approximately $945,681.03. *Id.* at 6. Relators then discuss both FRRATS and an August 2008 Department of Homeland Security, Office of Inspector General report that centered in significant part on FEMA's contract with Fluor. *Id.* at 6–7. The report states that Fluor's hauling and installation services "posed the greatest risk to FEMA for potential fraud, waste, and abuse" and Relators assert that an appendix to the report demonstrates that summer 2006 site visits revealed discrepancies between the information in FRRATS and conditions in the field. *Id.*

Citing a "FRRATS database excerpt" and "average" costs for certain services, Relators assert that Fluor should have billed FEMA for $571,095,000 for services on 48,587 trailers. *See id.* at 8 (citing Rec. Doc. 316-13). Relators assert that Fluor's invoice records reveal that it actually invoiced FEMA for $866,443,000.34, meaning "Fluor submitted false claims for payment to FEMA under Task Order 20, and Fluor knowingly received and kept approximately $295,348,000 in un-authorized over-payments from FEMA." *Id.* at 9 (citing Rec. Doc. 316-15). While Relators do not discuss the document in their opposition memorandum, they also include a spreadsheet in their statement of contested material facts, which they contend identifies roughly 200 instances of Fluor and Shaw duplicatively claiming to have installed the same trailer. *See* Rec. Docs. 316-1 at 6; Rec. Doc. 316-24. Relators argue that they have presented sufficient evidence to support their two remaining counts against Fluor to defeat summary judgment. *Id.* at 12–13.

###### D. *Fluor's Response*

In response to Relators' combined opposition, Fluor argues that Relators fail to address Fluor's factual assertions and legal arguments and instead present only a $295 million damages claim based on unauthenticated and inadmissible spreadsheets. Rec. Doc. 329. Fluor argues that the spreadsheets were "prepared by an unnamed person with no explanation of where the numbers came from on the spreadsheet or testimony vouching for the accuracy of the spreadsheet." *Id.* Fluor asserts that Relators' opposition fails to identify even one actual false claim by Fluor and constitutes a "tacit admission" that Relators' case is "totally frivolous." *Id.*

As to the 109 trailers, Fluor argues that Relators' opposition leaves unaddressed Fluor's argument that Relators have failed to show it acted with knowledge in submitting false claims to FEMA. *Id.* at 2. Fluor argues that Relators otherwise only come forward with unauthenticated or

likewise inadmissible evidence supporting their claim. *Id.* at 2–7. Fluor argues that, even to the extent the Office of Inspector General report discussed by Relators could be authenticated, it only describes a potential for fraud and makes explicit that no actual fraud was discovered. *Id.* at 4.

Fluor further argues that the spreadsheet constituting the basis for Relators' theory of overbilling is unsworn and that Relators have presented no affidavits, declarations, deposition testimony, or foundational evidence supporting the spreadsheet. *Id.* Fluor argues that the law is clear that the spreadsheet therefore cannot be considered competent summary judgment evidence. *Id.* (citing Federal Rule of Civil Procedure 56(c)). Furthermore, Fluor argues that Relators' statement that the spreadsheet is based on an excerpt of FRRATS further undermines its relation to this case, because that the record is clear that Fluor did not use FRRATS to invoice FEMA. *Id.* at 5–6. Also with regard to the spreadsheet, Fluor asserts that the spreadsheet's use of "average" costs has no foundation and notes that FRRATS contains no information regarding costs at all. *Id.* at 6–8. Fluor asserts that the categories used in Relators' spreadsheet demonstrates that the spreadsheet does not reflect Fluor's invoicing for many other services provided under Task Order 20, including "(1) constructing, operating, and maintaining staging yards, (2) maintenance of all [trailers hauled and] installed by Fluor, (3) technical support to FEMA for direct housing operations, (4) travel trailer group site grounds and infrastructure maintenance, (5) hauling trailers only, and (6) approximately $77 million in fixed fees charged by Fluor to FEMA." *Id.* at 9–10.

Fluor argues that "Relators have been given every possible opportunity over 7 years to conjure a case against Fluor, and have not been able to come up with anything." *Id.* at 10.

### III. Discussion

#### A. Summary Judgment Standard

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-movant, show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (internal quotation omitted) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute over a material fact is "genuine" if the evidence in the record is such that a reasonable jury could find in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). Courts, however, must draw all justifiable inferences for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has shown "that there is an absence of evidence to support the non-moving party's cause, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial." *TIG Ins.*, 276 F.3d at 759 (internal quotation omitted) (citing FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusory allegations, denials, improbable inferences, unsubstantiated assertions, speculation, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to

support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Amer. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

   B. *Fluor's Motions for Summary Judgment*

   Upon review of the briefs, the current record, and applicable law, the Court concludes that summary judgment on all of Relators' claims against Fluor is appropriate. In both of its motions for partial summary judgment, Fluor meets its initial burden. With the burden shifted to Relators, Relators have failed to point to evidence supporting the existence of a genuine dispute of material fact for trial.

   With regard to the 109 trailers, Fluor has presented a sufficient evidentiary basis supporting the conclusion that Fluor could not have had the requisite scienter to support liability under the False Claims Act. Fluor is correct that it cannot be liable under the False Claims Act for merely being negligent or even grossly negligent in presenting a false claim to the government, but instead must have at least done so with reckless disregard. *See United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338–39 (5th Cir. 2008). Fluor has come forward with affidavits, deposition testimony, and an expert report all supporting the conclusion that it had a reasonable process in place for vetting the invoices it received from subcontractors, vetting the invoices it submitted to FEMA, and auditing its claims for payments before contract close out to ensure compliance. Fluor caught 109 instances of possible overbilling in the context of almost 55,000 trailer placements and then promptly reimbursed FEMA absent any clear outside pressures to do so. The record does not support even an inference that Fluor acted with reckless disregard in presenting false claims to FEMA and Relators' opposition offers no evidence or case law to suggest otherwise. As such, summary judgment on any claim relating to the possible overbilling for 109 trailers is clearly appropriate.

13

As for Fluor's "no evidence" motion for partial summary judgment, Fluor has adequately demonstrated that Relators have no evidence indicating Fluor otherwise submitted a claim for payment to FEMA that could possibly constitute a false claim. Despite Relators' sweeping claim that Fluor defrauded FEMA of almost $300 million, a review of the support for Relators' claim makes clear that Realtors have not met their summary judgment burden to identify factual issues for trial. Relators' discussion of the spreadsheet supporting their claim—much less the spreadsheet itself—leaves completely unaddressed the authenticity of the document, as well as the foundation for the information contained in the spreadsheet. Rule 56(c)(2) clearly allows a party to object that an asserted fact is not supported by admissible evidence and Fluor has rightfully done so in this case. Without any indication of how the spreadsheet was developed other than "FRRATS database excerpt,"[5] the Court cannot accept the spreadsheet as admissible evidence.

The same goes for Relators' spreadsheet purportedly demonstrating instances of both Fluor and Shaw claiming to have installed the same trailer in their respective databases. Relators have presented no evidence authenticating or laying a foundation for the spreadsheet, nor offered any evidence indicating that Fluor actually invoiced FEMA.

Relators have pointed to no admissible evidence even raising the inference that Fluor could be held liable under the False Claims Act. Relators have been afforded great latitude in developing and pursuing their case against Fluor. At this late stage in the litigation, the Court finds no support in the record or the law to allow Relators' claims against Fluor to go to trial. Fluor is entitled to judgment as a matter of law.

Accordingly,

---

[5] Rec. Doc. 316 at 9.

14

      **IT IS ORDERED** that Fluor's "no evidence" motion for partial summary judgment is **GRANTED**. Rec. Doc. 303;

      **IT IS FURTHER ORDERED** that Fluor's "109 trailers" motion for partial summary judgment is **GRANTED**. Rec. Doc. 309;

      **IT IS FURTHER ORDERED** that all of Relators' claims against Fluor are **DISMISSED WITH PREJUDICE**. The case manager shall enter judgment accordingly.

      September 14, 2016

                                         **JAY C. ZAINEY**
                     **UNITED STATES DISTRICT JUDGE**