UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES ex rel.**<br>**THOMAS WARDER, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-4191** |
| **SHAW GROUP, INC., ET AL** | **SECTION "A"(3)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment by Shaw Environmental, Inc. ("Shaw"). Rec. Doc. 313. Relators Thomas Warder, Gary Keyser, and Elizabeth Reeves (collectively "relators") oppose the motion. Rec. Doc. 320. The Court granted Shaw leave to file a reply. Rec. Doc. 327. For the reasons that follow, the motion is GRANTED.

**I. Background**

This is a False Claims Act case in which relators allege that Shaw engaged in spurious billing under contracts with the Federal Emergency Management Agency ("FEMA") to haul, install, maintain, and deactivate temporary housing units following Hurricanes Katrina and Rita.[1] Under the operative fifth-amended complaint ("the complaint"), relators present a single count against Shaw, alleging that it duplicatively billed FEMA for the same work or billed FEMA for work not actually done. Civ. A. No. 06-11229, Rec. Doc. 258 at 22.

According to the complaint, relators are former employees of FEMA and worked as Supervisory Program Managers and Contracting Officer Technical Representatives (COTR). *Id.*

---

[1] Relators also have pending claims against defendant Fluor Enterprises, Inc. ("Fluor"). Motions for summary judgment regarding those claims will be addressed by separate order. Relators initially alleged a claim against CH2M HILL Contractors, Inc.; however, that claim was dismissed. *See* Rec. Doc. 87. The Court acknowledges the long and winding procedural history of this case. Rather than attempt to fully recount that history, the Court instead provides only that background clearly pertaining to the instant motion.

1

at 2. In that capacity, relators allege they provided "technical administration, contractor oversight and certification of payments" and monitored efforts being performed by contractors working for FEMA in the aftermath of Hurricanes Katrina and Rita. *Id.* Relators allege that, under Shaw's contract with FEMA, Shaw was obligated to perform various services related to temporary housing units, including site selection and inspection, utility installations, unit hauling and installation, leasing, maintenance, and unit deactivation. *Id.* at 6.

Relators contend that Shaw entered information about their work for FEMA into a database ("FRRATS") created and maintained by a third-party FEMA contractor. *Id.* at 8. Between September 2005 and November 2006, relators allege that Shaw had the ability to issue itself and subsequently bill FEMA for work orders, without notice to the FEMA contracting officer or FEMA employees like relators. *Id.* at 8–22. Relators contend that FEMA approved invoices tying to such work orders without having access to the FRRATS database and without the invoices clearly indicating the services being billed. *Id.* Relators allege that during the period in which Shaw was issuing itself work orders, Shaw engaged in double and triple billing for the placement of the same trailer and billed for work outside of the region to be served under its contract with FEMA. *Id.* Relators allege that despite their having discovered the false billing scheme by "combing through complex spreadsheets after the fact," it was not possible for FEMA employees to ascertain the scheme at the time that these work orders were issued." *Id.* Relators further allege that Shaw had exclusive possession and control over the information necessary to prove the allegations and establish damages. *Id.*

The case was filed under seal (in accordance with the False Claims Act) in June 2009. Rec. Doc. 1. After being unsealed three years later in October 2012, the case was consolidated with Civil Action Number 06-11229 in February 2013. *See* Rec. Docs. 31 & 85. While

consolidated, the Court, Judge Berrigan presiding, denied Shaw's motion to dismiss as to the still-pending Count I. *See* Civ. A. No. 06-11229, Rec. Doc. 203.[2] On May 6, 2014, the case was deconsolidated from 06-11229. *See* Rec. Doc. 87. In November 2014, relators' initial counsel moved to withdraw, citing "irreconcilable differences" on the best way to proceed with the case. Rec. Doc. 115. The Court stayed proceedings for roughly two months then granted current counsel for Relators' motion to substitute for Relators' initial counsel. *See* Rec. Docs. 115, 116, & 118.

Since January 2015, the case has been continued twice, with numerous discovery-related motions submitted to the assigned magistrate judge.[3] On January 5, 2016, the case was temporarily realloted to Section A. Rec. Doc. 196. On March 2, 2016, the Court held a status conference to discuss a motion to extend expert deadlines by relators and set a new trial date. Rec. Docs. 207. The Court ordered the parties to submit a joint proposed case management order. *Id.*

Prior to the submission of the joint proposed case management order, Shaw filed a motion for partial summary judgment on April 5, 2016. Rec. Doc. 229. The motion sought to dismiss Relators' claims that Shaw billed unauthorized work orders, duplicatively billed for 194 trailer installations, 1,744 trailer deactivations, and undefined maintenance work. *See* Rec. Doc. 229-1 at 1–2.

On April 7, 2016, the Court held a status conference to discuss the parties' proposed case management order and to coordinate with the parties a revised scheduling order containing deadlines for expert reports, discovery, and pretrial motion practice. Rec. Doc. 235. Relators

---

[2] By separate order, the Court dismissed relators' Count II against Shaw as jurisdictionally barred under the False Claims Act. *See* Rec. Doc. 87.

[3] Trial dates have been continued twice either by consent or unopposed motion. *See* Rec. Docs. 133, 138, 189, & 192. Judge Knowles has entered multiple orders regarding the scope of discovery and nature of the parties' discovery obligations. *See* Rec. Docs. 139, 176, 225, 238, 274, & 300.

opposed Shaw's motion on the ground that they needed additional time to complete discovery. Rec. Doc. 247. On June 2, 2016, the Court denied Shaw's motion for partial summary judgment without prejudice to Shaw's right to timely re-urge a motion for summary judgment. Rec. Doc. 265. The Court concluded that, in accordance with Federal Rule of Civil Procedure 56(d), Relators had adequately demonstrated a need for additional time for discovery. *Id.*

On July 27, 2016, the deadline for discovery and depositions passed. Rec. Doc. 235.[4] On August 3, 2016, Shaw filed the instant motion for summary judgment. Rec. Doc. 313. On August 11, 2016, Relators filed an opposition memorandum. Rec. Doc. 320. On August 17, 2016, Shaw filed its reply. Rec. Doc. 327.

## II. Arguments of the Parties

### A. *Shaw's Motion for Summary Judgment*

Shaw argues that it is entitled to summary judgment on all of Relators' claims, because there is no genuine dispute of material fact necessitating a trial on Relators' claims and because Relators' claims are precluded by the False Claims Act's public disclosure bar. *See* Rec. Doc. 313-1. Shaw asserts that there is no factual dispute that FEMA authorized the work performed by Shaw and that Relators' only possible grounds supporting their claim against Shaw are: 1) 374 instances of "possible" false trailer installation billings; 2) an allegation that a roughly $1 million credit received by FEMA from Shaw evidences other false claims; and 3) an allegation that Shaw sent late or inadequately supported invoices to FEMA. Rec. Doc. 313-1 at 2–4. Contending that the factual record decisively undermines these contended grounds for liability, Shaw argues it is entitled to summary judgment. *Id.*

---

[4] The Court granted Shaw's unopposed motion for leave to conduct a "preservation deposition" of FEMA employee, Stephen M. De Blasio, after the discovery cutoff. Rec. Doc. 299.

4

As to work authorization, Shaw asserts that the factual record is clear that FEMA approved all work performed by Shaw. *Id.* at 6–10.

As to the 374 possible false claims, Shaw asserts that Relators' identification of 374 "suspicious" trailer billings in a June 13, 2016, report of a data technician, Jeremy Albright ("Albright"), does not raise a genuine dispute of fact that Shaw presented false claims. *Id.* at 10–16 (citing Rec. Doc. 313-10). Shaw asserts that Albright's report falls short of establishing fraud by its own express terms and is further undermined by the documentation analysis of Shaw's expert, Mary Wills ("Wills"). *Id.*; *see also* Rec. Doc. 313-13. Shaw argues that Albright's report explicitly disclaims accomplishing anything other than using data science techniques and certain assumptions supplied by Relators to identify possible instances of fraud for further investigation. *Id.* (citing Rec. Doc. 313-10 at 1). Shaw further argues that, for each of the 374 possible instances of false claims, "cradle to grave" documents assessed by Wills establish that the claims are, in fact, not false. *Id.* (citing Rec. Doc. 313-13 at 20–25).

Shaw also argues that Relators' identification of 374 possible false claims does nothing to establish that Shaw presented the false claims knowingly or with reckless disregard as required by the False Claims Act for liability to attach. *Id.* Shaw points to systems it had in place during the life of the contract that demonstrate it made adequate efforts to ensure its bills were accurate. *Id.* Finally, Shaw argues that—even assuming Shaw double billed FEMA for 374 out of 27,000 trailer installations—such a violation would be noncognizable, pointing to deposition testimony of FEMA Director of Housing Operations, Stephen De Blasio, that minor billing errors would not be indicative of fraud. *Id.* (citing *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1995 (Jun. 16, 2016)).

As to the credits paid to FEMA by Shaw, Shaw asserts that Relators' allegations that these credits evidence fraud are without merit. *Id.* at 16–21. Shaw asserts that it credited approximately $1 million to FEMA following credits it received from subcontractors made in response to an audit by Shaw. *Id.* Shaw argues that the credits were an ordinary feature of a cost reimbursement contract like the one it had with FEMA and that, if anything, the credits demonstrate that Shaw intended to and did accurately bill FEMA over the life of the contract. *Id.*

As to late or inadequately supported invoicing, Shaw argues that the record clearly demonstrates that Shaw was not late in submitting invoices, nor did it fail to adequately support claims for payment. *Id.* at 21–24. Shaw asserts that each of its claims for payment were supported by extensive documentation. *Id.* (citing Rec. Doc. 313-13).[5]

Finally, Shaw argues that Relators' claims are jurisdictionally barred by the False Claims Act's public disclosure bar. *Id.* at 24–28. Shaw argues that the basis for Relators' claims were publically disclosed through a 2008 Department of Homeland Security Office of Inspector General report. *Id.* Shaw argues that Relators, as FEMA employees at the time of the underlying events, were not the original source of any information supporting Relators' suit filed a year later in 2009 and therefore may not bring a claim under the False Claims Act. *Id.*

*B. Relators' Opposition*

Relators assert that they have presented adequate evidence to support the existence of genuine disputes of material fact necessitating a trial. Rec. Doc. 320. Relators either concede or leave unaddressed most of Shaw's summary judgment arguments; however, they assert that they have identified two Shaw invoices that facially contain double billing for trailer transportation services, which constitute clear violations of the False Claims Act. *See id.* Relators assert that

---

[5] Shaw's memorandum also includes one paragraph asserting that Relators have abandoned any claim that Shaw fraudulently billed for trailer maintenance services. *Id.*at 24.

these invoices are sufficient to defeat Shaw's motion for summary judgment and that they will later present additional evidence to prove Shaw's liability. *Id.* at 5 n.1.[6]

Relators argue that the two invoices, and two underlying subcontractor invoices, clearly demonstrate that Shaw billed FEMA for moving the same trailer needlessly. *See id.* at 22–25 (citing Rec. Doc. 313-2). Relators argue that the pertinent invoices merely state that trailers were moved from the FEMA Sherwood Forrest Trailer staging area to "various Shaw directed sites," yet contain itemized lists suggesting that the same trailer was moved twice, occasionally on the same day, by the same driver. *Id.* Relators argue that the double billing is facially apparent and the services clearly were provided at the direction of Shaw, so as to support the inference that Shaw acted with reckless disregard in billing FEMA for the hauling services. *Id.* Relators argue that FEMA would not have paid Shaw's invoices had it known it was being billed for the same work twice and that there is no dispute that FEMA actually paid the invoices. *Id.* Relators argue they have therefore presented adequate evidence to defeat Shaw's motion for summary judgment. *Id.*

*C. Shaw's Reply*

In its reply, Shaw asserts that Relators' opposition does not address Shaw's stated and supported grounds for summary judgment, but instead attempts to raise a new dispute regarding alleged double billing for trailer transportation. *See* Rec. Doc. 327 at 2–5. Shaw asserts that Relators' assertions about the trailer transportation double billing fail to raise a genuine dispute of material fact for three reasons. *Id.* at 5–10. First, Shaw argues that the operative complaint contains no allegation that Shaw double billed for trailer transportation, but instead only alleges that Shaw double billed for "trailer installation, deactivation, and maintenance done once" or not

---

[6] Relators' counsel asserts that he has had inadequate time to prepare the opposition due to military service obligations and the tight timeline for his opposition set in the scheduling order. *See* Rec. Doc. 320 at 5 n.1.

done at all. *Id.* at 5–6. Shaw argues that the operative complaint does contain an explicit allegation that *Fluor* double billed for trailer transportation services, thereby supporting the conclusion that Relators never alleged that *Shaw* double billed for trailer transportation services. *Id.*

Second, Shaw argues that documents cited by Relators in support of their argument that Shaw double billed for trailer transportation services has never been authenticated and that Relators did not include an affidavit attesting to authenticity. *Id.* at 7–8. Third, Shaw argues that the documents cited by Relators do not actually support a violation of the False Claims Act. *Id.* at 8–10. Shaw argues that the record clearly demonstrates that Shaw was authorized by FEMA to bill FEMA for moving the same trailer more than once. *Id.* Shaw asserts that the pertinent task order contemplates Shaw moving trailers in distinct legs, citing the following language:

> [Shaw] shall deliver travel trailers to and remove from FEMA staging areas and other locations designated by the COTR. This includes, but is not limited to transporting units from FEMA Baton Rouge staging areas to Shaw Baton Rouge group sites; transporting units from FEMA Baton Rouge staging areas to Shaw New Orleans and Jefferson parish staging areas; transporting units from Shaw New Orleans and Jefferson staging areas to New Orleans and Jefferson group and private sites. Unit transportation and staging shall be provided in the most efficient and economical method with specialized long haulers from Baton Rouge to New Orleans and Jefferson parishes.

*Id.* (citing Rec. Doc. 313-6).[7] Shaw argues that the plain language of the task order establishes that FEMA contemplated Shaw moving the same trailer more than once, and also noted that the task order authorized Shaw to transport well over twice the number of trailers that FEMA authorized Shaw to actually install. *Id.* Furthermore, Shaw argues that Relators' cited documents offer no support for the conclusion that Shaw knowingly

---

[7] The Court notes Shaw cites to exhibit 4 to Exhibit 1 that was attached to its statement of uncontested material facts. Rec. Doc. 327 at 9. It is apparent from a review of Exhibit 1 that the citation was in error and that Shaw meant to cite to exhibit 5 to Exhibit 1, which contains the quoted language on page 6 of 10.

double billed for trailer hauling services. Finally, Shaw notes that the double billing asserted by Relators amounts to approximately $45,000, which represents .01% of Shaw's total billing to FEMA under the pertinent task order. *Id.* at 10.

## II. Discussion

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-movant, show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (internal quotation omitted) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute over a material fact is "genuine" if the evidence in the record is such that a reasonable jury could find in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). Courts, however, must draw all justifiable inferences for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has shown "that there is an absence of evidence to support the non-moving party's cause, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial." *TIG Ins.*, 276 F.3d at 759 (internal quotation omitted) (citing FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusory allegations, denials, improbable inferences, unsubstantiated assertions, speculation, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th

Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Amer. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

Upon review of the briefs, the current record, and applicable law, the Court concludes that Shaw is entitled to summary judgment relief. The evidence cited by Shaw in its motion for summary judgment satisfies Shaw's initial burden to demonstrate no genuine dispute of material fact preventing summary judgment for Shaw. With the burden shifted to Relators, Relators have failed to point to evidence supporting the existence of a genuine dispute of material fact for trial.

While the Court notes that Relators make the unsupported assertion that they have other evidence supporting False Claims Act violations by Shaw,[8] the evidence actually cited by Relators indicates that Relators' claim effectively boils down to approximately 120 instances of Shaw's subcontractors billing to move the same trailer twice and then Shaw billing FEMA for those sums. Even assuming Relators' complaint adequately alleges that Shaw double billed for trailer transportation services and disregarding whether Relators' cited documents have been properly authenticated, the Court is not persuaded that the mere fact that Shaw billed FEMA for moving the same trailer twice actually raises a genuine dispute of material fact that Shaw knowingly presented false claims to FEMA.

Relators do not dispute that, in addition to the invoices for services submitted to FEMA, Shaw delivered to FEMA "comprehensive backup documentation in hard copy (and CDs) to support, among other things, amounts billed to Shaw by its subcontractors, and amounts payable to its subcontractors, for services performed under the Contract." Rec. Doc. 320 at 17. Yet

---

[8] The Court acknowledges the statement of Relators' counsel regarding time and scheduling constraints. *See* Rec. Doc. 314-1 at 5. The Court has previously granted Relators a substantial extension of time to conduct discovery and the scheduling order agreed to by Relators' counsel gave Relators sufficient notice of the timeline for dispositive motions and opposition to dispositive motions.

Relators' opposition depends merely on the invoices, without any discussion of whether the backup documentation supporting the invoices fails to support Shaw's well supported contention that the pertinent task order clearly contemplates that Shaw would move—and bill for—the same trailer more than once. *See* Rec. Doc. 313-6 ("Exhibit 5 to Stephen M. De Blasio, Sr. Declaration" at 6 of 10). Relators are entitled to reasonable inferences as the nonmovant, but the Court cannot conclude here that it is reasonable to infer that Shaw knowingly presented a false claim to FEMA by billing twice for moving a trailer without actually moving that trailer twice.

Disregarding Relators' claim regarding the trailer transportation billing, the Court finds no evidence in the record supporting the conclusion that Shaw violated the False Claims Act. As such, the issue of whether Relators' claims are jurisdictionally precluded by the False Claims Act's public disclosure bar is moot. Shaw is entitled to judgment as a matter of law. Accordingly,

**IT IS ORDERED** that Shaw's motion for summary judgment is **GRANTED**. Rec. Doc. 313.

**IT IS FURTHER ORDERED** that all of Relators claims against Shaw are **DISMISSED WITH PREJUDICE**. The case manager shall enter judgment accordingly.

September 14, 2016

_____
**JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE**